# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 45522

| | | |
|---|---|---|
| MAJID KOLESTANI, aka NASTARAN KOLESTANI, | ) | Filed: December 21, 2018 |
| | ) | |
| Petitioner-Appellant, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| v. | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| STATE OF IDAHO, | ) | BE CITED AS AUTHORITY |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. G. Richard Bevan, District Judge.

Judgment of the district court summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

Majid Kolestani appeals from the district court's judgment dismissing her petition for post-conviction relief without an evidentiary hearing and from the district court's order denying her motion for reconsideration. Kolestani argues that the district court erred in summarily dismissing her post-conviction claims because she presented genuine issues of material fact on whether her plea was made knowingly, intelligently, and voluntarily and whether her counsel was ineffective. In addition, Kolestani alleges that the district court abused its discretion in denying her motion for reconsideration without comment. For the reasons set forth below, we affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Kolestani (an Iranian refugee) was charged with first-degree murder with a weapons enhancement, Idaho Code § 18-4003, in relation to the shooting death of her husband. Pursuant to a plea agreement, the State agreed to dismiss the weapons enhancement and Kolestani pled guilty to first degree murder. As a consequence of the plea agreement, Kolestani waived her right to appeal and to file an Idaho Criminal Rule 35 motion. The district court sentenced Kolestani to a unified term of life imprisonment, with eighteen years determinate. In 2015, Kolestani filed a pro se petition for post-conviction relief. Thereafter, Kolestani was appointed post-conviction counsel and filed a verified amended post-conviction petition. First, as relevant to her claim on appeal, Kolestani alleges that her guilty plea was the result of coercion and, therefore, was not made knowingly, intelligently, and voluntarily. Second, she claims her trial counsel was ineffective because counsel gave her erroneous advice regarding the deportation consequences of her plea. The State responded to the amended petition and moved for summary dismissal on the bases that the petition was time-barred and otherwise failed to raise a genuine issue of material fact entitling Kolestani to an evidentiary hearing on any of her claims.

The district court entered an order partially granting and partially denying the State's motion for summary dismissal. The partial denial was based, in part, on the finding that Kolestani had presented genuine issues as to whether her case was entitled to equitable tolling. The district court granted the State's motion for summary dismissal as to the involuntary guilty plea and erroneous advice claims finding that the claims lacked evidentiary support and were disproved by the record. After Kolestani advised the court that she would not pursue the remaining claims in her petition, the court entered a final judgment dismissing her petition in its entirety. Later, Kolestani filed a motion for reconsideration in which she asked the court to reconsider its summary dismissal in light of information contained in a report, which was never presented to the district court, prepared by an immigration attorney. The district court denied Kolestani's motion for reconsideration. Kolestani timely appeals.

## II.

## ANALYSIS

Kolestani argues that the district court erred by summarily dismissing her petition for post-conviction relief because she raised genuine issues of material fact on whether her guilty plea was involuntary and whether she received ineffective assistance of counsel. Additionally, Kolestani argues that the district court erred by denying her motion for reconsideration because it did so without comment.

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App.

1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the state does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

### A. Guilty Plea

Kolestani argues that the district court erred in summarily dismissing her guilty plea claim because she presented genuine issues of material fact on whether her plea was entered into knowingly, intelligently, and voluntarily. Specifically, Kolestani contends that her plea was

coerced because she was ignorant of the immigration consequences and her trial counsel told her that she would be immediately deported if she did not plead guilty. The State contends that the district court was correct in summarily dismissing Kolestani's claim because it was clearly disproved by the record. Whether a plea is voluntary and understood entails inquiry into three areas: (1) whether the defendant's plea was voluntary in the sense that she understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived her rights to a jury trial, to confront her accusers, and to refrain from incriminating herself; and (3) whether the defendant understood the consequences of pleading guilty. *State v. Colyer*, 98 Idaho 32, 34, 557 P.2d 626, 628 (1976). In dismissing Kolestani's involuntary guilty plea claim, the district court ruled that Kolestani's assertion was belied by the record. We agree. Kolestani's plea agreement, guilty plea advisory form, and plea colloquy show that Kolestani's plea was entered into knowingly, intelligently, and voluntarily.

First, Kolestani argues that she was coerced through ignorance because at all times she did not speak, read, or comprehend English, and she was ignorant of the law in regard to deportation. However, throughout the proceedings, Kolestani was provided with a Farsi interpreter and advised by counsel. During the change of plea hearing, the district court asked her: "Miss Kolestani, have you been able to understand the translation from English to Farsi as you worked with [the interpreter]?" Under oath, Kolestani answered, "Yes." The plea agreement was also explained to Kolestani and she initialed that she understood that if she was not a citizen of the United States, the entry of a plea or making of factual admissions could result in her deportation or removal from the United States. Additionally, during the plea colloquy the district court reaffirmed that Kolestani understood the potential for deportation when it asked, "You have told me, told the Court in this form that you recognize the potential of deportation from this country. Are you aware of that?" Kolestani answered, "Yes." Therefore, Kolestani's assertion that her plea was coerced through ignorance is disproved by the record.

Second, Kolestani alleges that she was coerced into pleading guilty because she was informed by counsel that "if [s]he did not sign the plea agreement [s]he would be immediately deported due to the nature of the crime."[1] However, Kolestani signed the plea agreement which

---

[1] Kolestani alleges that she was fearful of deportation because she would likely be deported to Pakistan or Afghanistan and, as a transgender woman, those countries' laws would require that she be executed.

specifically indicated that her "decision to accept th[e] agreement and to tender a plea of guilty [was] freely and voluntarily made and [was] not the result of force, threats, assurances, promises, or representations other than the representation contained" in the agreement. When asked why she was pleading guilty to the charges in this case, Kolestani wrote "because I did it . . . I shot Ehsan on purpose." In the guilty plea advisory, Kolestani certified that she "answered the questions on pages 1-8 of th[e] Guilty Plea Advisory form truthfully, understand[ing] all of the questions and answers . . . hav[ing] discussed each question and answer with [her] attorney, and hav[ing] completed th[e] form freely and voluntarily." Furthermore, she agreed that "no one has threatened me to do so." During the plea colloquy, the district court went through the plea agreement in detail on the record and Kolestani indicated that "everything [wa]s correct." When asked: "Miss Kolestani, has anyone pressured you or threatened you or coerced you in any way to enter this guilty plea today?" She replied, "No."

As noted, a valid plea must be voluntarily made and not the result of force, threats, assurances, promises, or representations other than those contained in the agreement. Kolestani argues that her plea was based on counsel's assurances, promises, and representations that without the plea, she would be immediately deported and by force and threat that she did not have time to think about it and without an immediate agreement, the offer would be withdrawn. As such, Kolestani asserts that she had to take the deal and live or reject the deal and die. After considering Kolestani's argument as true (thus eliminating factual disputes), the district court drew the reasonable inference that if such had been the case, Kolestani would not have consistently denied such threats and representations during the extended plea process. Thus, the record belies the claim. Kolestani assured the court multiple times that her plea was voluntary, and no one had threatened or coerced her in any way. Although Kolestani alleges that she was coerced into pleading guilty, her allegation is disproved by the record.

### B. Ineffective Assistance of Counsel

Kolestani claims that the district court erred in summarily dismissing her ineffective assistance of counsel claim because she raised a genuine issue of material fact on whether her trial counsel gave her deeply erroneous advice on deportation consequences.[2] The State contends that the record and the applicable law support the district court's ruling that Kolestani

---

[2] Kolestani also argues that the district court improperly drew inferences based on facts that were controverted. As discussed above, the district court's inference was proper.

failed to present a genuine issue of material fact as to the first prong of an ineffective assistance of counsel claim.

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). Where, as here, the petitioner was convicted upon a guilty plea, to satisfy the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted on going to trial. *Plant v. State*, 143 Idaho 758, 762, 152 P.3d 629, 633 (Ct. App. 2006). This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

In her verified amended petition for post-conviction relief, Kolestani alleged that "When the plea agreement was brought to Petitioner in June of 2009, Petitioner was told that if [s]he did not accept the plea agreement, [s]he would be immediately deported," and "[w]ithout the fear of being immediately deported, Petitioner would not have pled guilty." She argues that this advice was incorrect and therefore fell below an objective standard of reasonableness. The district court found that Kolestani's allegation was disproved by the record, therefore her claim failed on the first prong of *Strickland*. We agree.

Kolestani's ineffective assistance of counsel claim is primarily based on the same premise, the alleged statement from counsel, as her involuntary guilty plea claim. As discussed above, the record disproves Kolestani's claim that counsel told her that she would be immediately deported if she did not plead guilty. Kolestani acknowledged that no other promises, other than the promises that were in the guilty plea memorandum, had been made to her which influenced her decision to plead guilty. During the change of plea hearing, while she

was under oath, the district court specifically asked Kolestani, "Is there any part of your plea agreement in this case that we have not discussed so far here in court today?" Kolestani answered, "No." Kolestani assured the court numerous times that she had disclosed all matters affecting her decision to enter her guilty plea. Accordingly, Kolestani's post-conviction claim that her counsel advised her she would be subject to immediate deportation if she did not enter a guilty plea is disproved by the record.

## C.    Motion for Reconsideration

Finally, Kolestani argues that the district court abused its discretion when it denied her motion for reconsideration because it did so without comment. In so arguing, she asserts that her motion for reconsideration was in effect an I.R.C.P. 60(b) motion because the immigration report attached presented new evidence that the district court did not consider in granting summary dismissal and the motion should have been treated for its substance over its form. The State contends that even if the motion is considered an I.R.C.P. 60(b) motion, the motion failed on its face to entitle Kolestani to relief under Rule 60(b)(1) because it was without merit, and any error by the district court in failing to explain its reasoning for denying the motion should be deemed harmless.

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion, acted consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Contrary to Kolestani's argument, the district court did not abuse its discretion in denying Kolestani's motion to reconsider summary dismissal without commenting. Although Kolestani argues that her motion was in essence a Rule 60(b) motion and should be treated for its substance over its form, her motion was not properly filed as a Rule 60(b). During a status hearing on the State's motion for summary dismissal of Kolestani's post-conviction petition, Kolestani's counsel explained that he thought the immigration report had become part of the court file, but later realized that the report had only been sent to Kolestani and the State. Counsel explained to the court that he "thought about filing a motion to reconsider, but felt this report likely would not have been an influence to [the court's] decision" and that he "felt it should just be included to make a complete file for the Appeals Court." The district judge entered a final judgment

8

dismissing Kolestani's claims. Thereafter, Kolestani filed a "motion for reconsideration" before a new district judge and attached the immigration report.

While motions to reconsider in post-conviction proceedings may be filed under Rule 60(b), Kolestani did not properly do so here. *See Eby v. State*, 148 Idaho 731, 228 P.3d 998 (2010). First, I.R.C.P. 7(b)(1) mandates that a motion must state the number of the applicable rule. Kolestani concedes that her motion failed to comply with I.R.C.P. 7(b)(1). Not only did the motion fail to mention the rule, it failed to mention any basis under Rule 60(b), including excusable neglect under which Kolestani can seek relief. While Kolestani's counsel stated at a hearing that he thought the report had become part of the court file, there was no claim in the later motion that the failure to include the immigration report was excusable. Even if considered as a Rule 60(b) motion, no legal or factual basis for the motion was presented. The motion for reconsideration lacked both substance and form; therefore, the motion failed to provide the second judge with a basis for ruling on the motion.[3] Thus, the district court did not abuse its discretion when it denied Kolestani's motion to reconsider without commenting.

## III.

## CONCLUSION

The district court did not err by summarily dismissing Kolestani's claims or by denying her motion to reconsider. Accordingly, the district court's order dismissing Kolestani's petition for post-conviction relief without an evidentiary hearing is affirmed.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.

---

[3]     We also note that the immigration attorney's report dealt with the likelihood that Kolestani would be detained indefinitely <u>after</u> serving her time, not whether advice that immediate deportation without signing the plea agreement was erroneous.